CARRABINE CONSTRUCTION COMPANY, APPELLEE, *v.*
CHRYSLER REALTY CORPORATION, APPELLANT.

[Cite as Carrabine Constr. Co. *v.* Chrysler Realty Corp. (1986),
25 Ohio St. 3d 222.]

(No. 85-1441—Decided August 6, 1986.)

*Joseph T. McGinness,* for appellee.

*Jones, Day, Reavis & Pogue, Timothy J. Grendell* and *Thomas P. Mulligan,* for appellant.

LOCHER, J. The issue presented in this action is whether the trial court properly granted summary judgment in favor of Chrysler. For the reasons that follow, we hold that summary judgment was properly granted and, accordingly, reverse the judgment of the court of appeals on this issue.

Our analysis must begin by examining the procedural controversy surrounding this action. The controversy centers around the testimony of Norman Salem, zoning administrator for the city of Akron. Salem's testimony was presented for the first time at the summary judgment hearing on March 29, 1983. That trial court heard Salem's sworn testimony and stated in its opinion and ruling that it was "convinced that, as a matter of law, the property in question was properly zoned. The testimony of Mr. Norman Salem * * * was most persuasive in this regard. * * *" The trial court then granted summary judgment in favor of Chrysler. In *Carrabine Constr. Co.* v. *Chrysler Realty Corp.* (Dec. 22, 1983), Cuyahoga App. No. 46886, unreported, the court of appeals, in overturning the trial court's decision, stated:

"'* * * [T]he court based its ruling upon the oral testimony of Salem as to the procedures which allegedly should have been followed by * * * [Car-

rabine] to avoid delay, and in addition, heard testimony concerning claimed oral modifications of the contract documents.

"* * * We find that in the instant case the court's consideration of the testimony, presented for the first time at the hearing, is improper under Civ. R. 56.

"Absent the testimony of Salem, the court was unable to determine whether the subject property was improperly zoned, as claimed by * * * [Carrabine], and therefore it could not grant summary judgment on the issue of delay as a matter of law."

Following remand, Chrysler again moved for summary judgment under Civ. R. 56(C). Chrysler submitted the transcript of the testimony of Salem from the prior hearing as part of its evidence. On August 30, 1984, the new trial court granted Chrysler's motion for summary judgment. Upon appeal, the court of appeals stated in pertinent part: "We conclude that the transcribed oral testimony was not properly before the court. Although Civ. R. 56(C) permits transcripts of evidence in the pending case, *e.g., Gessler* v. *Madigan* (1974), 41 Ohio App. 2d 76 [70 O.O.2d 68], we construe this to mean transcripts of evidence in the pending case otherwise than in connection with the motion for summary judgment. * * * The testimony should not have been presented and received in the first place and cannot be legitimatized by having it transcribed." We do not agree.

Civ. R. 56(C) provides in relevant part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, *transcripts of evidence in the pending case,* and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." (Emphasis added.)

Thus, a trial court is precluded from considering supplemental oral testimony introduced for the first time at a hearing on a motion for summary judgment under Civ. R. 56. The language of the rule is clear as to what should be considered by a trial court in a summary judgment proceeding. Additionally, a summary judgment hearing is not the proper setting for conducting a full trial.

In the instant case, the oral testimony was improperly considered by the trial judge when heard for the first time in the summary judgment hearing on March 29, 1983. However, that testimony does not remain "defective" following transcription when the testimony is reliable. The transcribed testimony of Norman Salem was properly considered by the trial court in the 1984 summary judgment proceeding. The testimony is embraced within Civ. R. 56 as "transcripts of evidence in the pending case." To rule that the transcript of Salem's testimony should not have been considered is, in effect, to rule that the transcript is not reliable evidence. However, the testimony is reliable. The transcribed testimony is

sworn testimony in a court of law at a hearing in which opposing counsel was present. Opposing counsel had the opportunity to rebut the testimony and cross-examine Salem. Finally, the 1984 summary judgment was granted by a judge who did not hear or witness the oral testimony. Chrysler contends that the transcribed oral testimony is analogous to a deposition transcript. We agree.

Additionally, to require Chrysler to have the same testimony transcribed in a deposition or written in interrogatories would, at this point, be senseless and result in a triumph of form over substance. Also, further consideration of this testimony by yet another trial court would amount to a waste of judicial resources. Thus, we hold that the transcribed testimony of Norman Salem was properly considered by the trial court.

We must now consider whether the facts contained in the record, as considered by the trial court, warrant summary judgment in favor of Chrysler. "It is axiomatic that summary judgment shall be rendered only when the movant has shown that there is no genuine issue as to any material fact. Civ. R. 56(C). Further, upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion. * * *" *Campbell* v. *Hospitality Motor Inns, Inc.* (1986), 24 Ohio St. 3d 54, 58. It should be noted that the court of appeals below, following its discussion on the transcribed testimony, concluded: "Moreover, the substance of the disputed evidence would not warrant summary disposition." Upon an examination of the record in the light most favorable to Carrabine, we disagree with this finding of the court of appeals.

It is necessary to outline the facts once again. In February 1972, Chrysler solicited bids for construction of a new car dealership in Akron, Ohio. Carrabine was awarded the contract as the successful contractor-bidder. The "bid package," which was received by all bidders, consisted of several documents. These documents outlined, among other things, the duties and obligations to be incurred by the successful contractor-bidder. After the contract was awarded to Carrabine, several additional documents became part of the "contract." At least six of the documents[2] specifically placed the burden of complying with all local laws, ordinances and regulations on the contractor. The contractor also had the responsibility to secure all necessary permits. Additionally, Article 30 of the document entitled "General Conditions for Construction Contracts" provided a "no damages for delay" clause. This clause specifically places the

---

[2] These documents include those entitled:
"General Conditions for Construction Contracts"
"Site Investigation Report"
"Procedures After Award of Contract"
"Proposal Form"
"Agenda-Purchasing Pre-Award Meeting Design & Build Construction Contract"
"Purchase Order"

risk of delay, including those caused by governmental act or regulation, on the contractor, and states in pertinent part: "The Contractor *shall have no claim against the Owner for an increase in the contract price or a payment or allowance of any kind* based on any damage, loss or additional expense the Contractor may suffer as a result of any delays in prosecuting or completing the work under the contract, whether such delays are caused by the circumstances set forth in the preceding paragraph or by any other circumstances. It is understood that the contractor assumes all risks of delays in prosecuting or completing the work under the contract." (Emphasis added.)

The Site Investigation Report, which was one of the many documents involved in this transaction, provided the zoning status of the construction site. It states in pertinent part: "This is a unified planned development district[.] * * * Preliminary plans must be submitted to planning comm. for review & approval." This report also listed the persons to be contacted within the Akron city government. This report was provided by Chrysler prior to the acceptance of bids. The construction site was located in Akron Unified Planned Development ("UPD") District No. 4. This district was established by a 1970 Akron ordinance. The fourteenth permitted land use set forth in the ordinance was a "new car dealership." Section 4 of the ordinance required that all developments in the "UPD" area comply with Section 1773.075(c) of the city code, respecting the submission of plans to city council for an ordinance permitting conditional zoning for the use of a new car agency before a building permit could be issued.

In the instant case, Carrabine, apparently unaware of the need for this conditional zoning, had final drawings prepared and submitted for review with its request for a permit. Carrabine received information from the Akron Public Service Department on or about May 24, 1972, that a permit could not be issued because the "land is in UPD # 4 and the use in not automatic. Before a bldg. permit can be issued, these people must petition for a rezoning for this use." Carrabine filed a petition for conditional zoning on June 2, 1972. Due in large part to the August recess of the Akron City Council, the petition was not fully processed until October 3, 1972. A building permit was finally issued later that month. The delay resulted in substantial cost overruns for Carrabine and it now seeks recovery of these costs from Chrysler.

Carrabine contends that Chrysler was responsible for the proper zoning of the construction site. Carrabine further claims that the property was improperly zoned, preventing commencement of construction and necessitating extraordinary effort on Carrabine's part to obtain the necessary rezoning. Chrysler contends that Carrabine is barred from bringing its claim based upon the "no damages for delay" clause. Carrabine does not question the general validity of such clauses, but avers that the clause is not applicable in this case because the damages resulting from this delay were not within the contemplation of the parties at the time the contract was made.

The "no damages for delay" clauses which exculpate a contractee from liability for damages suffered by a contractor by reason of being delayed in the performance of its work have generally been accepted as valid under Ohio law, *Burns Bros. Plumbers, Inc.* v. *Groves Ventures Co.* (C.A. 6, 1969), 412 F. 2d 202 [50 O.O.2d 180], subject to certain exceptions. *Nix, Inc.* v. *Columbus* (1959), 111 Ohio App. 133 [14 O.O.2d 44]. In *Nix,* a similar "no damages for delay" clause was held to be inapplicable where the plaintiff-contractor was unable to complete a bridge on time because the defendant-city did not own the necessary right-of-way so that construction could begin. The city had expressly represented to the contractor that a right-of-way had been acquired when in fact it had not been acquired. The court based its ruling on the fact that both parties had signed the contract on the assumption that the city had acquired the right-of-way when in fact it had not, and therefore the damages arising from the delay caused by the failure of the city to obtain a proper right-of-way were "not within the contemplation of the parties at the time the contract was made." *Id.* at 145.

Carrabine relies heavily upon *Nix, supra,* in an attempt to circumvent the clause in the instant action. This reliance is misplaced. Chrysler itself made no affirmative representations or concessions that the construction site complied with all local ordinances. In fact, Chrysler placed the burden of complying with the local ordinances on the contractor in the documents dispersed prior to bidding and after the contract was awarded. The documentary evidence, including the transcribed testimony, showed that (1) the property in question was properly zoned, *i.e.,* a "new car dealership" was a permitted use; (2) the processing procedures generally took about three months; and (3) the processing in the instant case represented a standard situation. Carrabine was aware of its burden to comply with the local laws, ordinances and regulations and to procure all necessary permits, by the language of the several documents which were part of the "contract," both prior to and after the bidding process.

Carrabine made no effort, prior to submitting its bid, to check with Akron concerning what was necessary for the issuance of a building permit or the length of time it would take for processing. The testimony of Norman Salem shows that this information was available. Carrabine could have made some kind of inquiry and incorporated any extra cost due to delay in its bid. Carrabine contracted to bear the responsibility of complying with the various ordinances and to accept the risk of cost overruns caused by any delay. Also, the "no damages for delay" clause specifically mentions that no claim for damages as a result of delay can be made when the delay is caused by governmental act or regulation. Damages caused by this type of delay were clearly within the contemplation of the parties.

Carrabine voluntarily, intelligently and knowingly entered into this "contract" and is bound by its terms. Thus, no issues of material fact exist and summary judgment in favor of Chrysler is proper.

Accordingly, the judgment of the court of appeals reversing the trial court's granting of the motion for summary judgment is reversed.

*Judgment reversed.*

SWEENEY, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.