**JWP/HYRE ELECTRIC CO. OF INDIANA, Plaintiff,**

v.

**MENTOR VILLAGE SCHOOL DISTRICT, et al., Defendants.**

**No. 1:95CV0296.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 9, 1996.

Bruce P. Mandel, Ulmer & Berne, Cleveland, OH, John D. Marshall, Lee C. Davis, Thomas G. Cross, Griffin, Cochrane & Marshall, Atlanta, GA, for JWP/Hyre Electric Company of Indiana, Inc.

Robert M. Gippin, Daniel M. McIntyre, Buckingham, Doolittle & Burroughs, Akron, OH, for Mentor Exempted Village School District.

Richard M. Chapis, Canton, OH, for Northern Valley Contractors, Inc.

R. Russell O'Rourke, O'Rourke & Associates, Cleveland, OH, for Vadakin Refrigeration and Air Conditioning, Inc.

Mark I Wachter, Mays, Karberg & Wachter, Cleveland, OH, for Northern Ohio Plumbing Co.

Kenneth B. Baker, Michael D. Linn, Javitch, Block, Eisen & Rathbone, Cleveland, OH, for Amthor Steel, Inc.

David H. Wallace, Kelley, McCann & Livingstone, Cleveland, OH, for Industrial First, Inc.

Patrick Francis Roche, Sr., Dennis R. Fogarty, Davis & Young, Cleveland, OH, for John F. Cleary Construction Company.

Barry Alan Waller, Fry & Waller, Columbus, OH, for Waller–Duman, Inc.

R. Benton Gray, Jeffrey R. Appelbaum, Daniel M. Haymond, Thompson, Hine & Flory, Cleveland, OH, for R.P. Carbone Construction Co.

William J. Muniak, Arter & Hadden, Cleveland, OH, for HWH Architects–Engineers–Planners Inc.

ANN ALDRICH, District Judge.

JWP/Hyre Electric Company of Indiana, Inc. brought this diversity action for breach of contract against Mentor Exempted Village School District (MEVSD) and several other contractors, including John F. Cleary Construction Company, for additional expenses incurred in the construction of the Mentor High School Fine Arts Facility. Clear has filed a cross-claim against MEVSD. MEVSD has now moved for summary judgment against JWP/Hyre and Cleary. For

the reasons discussed below, this motion is denied.

I.

In August, 1992, MEVSD put out an invitation to bid on the construction of a fine arts facility at Mentor High School. The facility was to include a 1,500–seat auditorium, multimedia facilities, offices, and classrooms. MEVSD did not hire a general contractor; rather, it divided the project into trade areas and entered directly into a separate contract for each trade area. JWP/Hyre was awarded the contract for the electrical work, while Cleary received the contract for the finishing work, such as interior carpentry, ceilings, flooring, and painting. In addition to hiring the individual contractors, MEVSD hired R.P. Carbone Construction Co. as construction manager for the project.

The project was initially slated to be completed in June, 1993. However, construction quickly fell behind schedule. The structural steel was not delivered and erected on time. This prevented the roofs and exterior walls of the project from being completed before the beginning of winter. As a result, the winter weather turned the working area into a morass. In order to install an underground conduit under these conditions, JWP/Hyre incurred additional expenses. In addition, other contractors working in the auditorium damaged the underground conduit, forcing JWP/Hyre to redo much of its earlier work.

JWP/Hyre also alleges that the design of the project was deficient. Specifically, the seating dimensions for the auditorium did not match the locations for the electrical boxes, resulting in delay and excess labor costs. Also, the seats for the auditorium came with a brace, not shown on the plans, which obstructed JWP/Hyre's access to the electrical boxes.

The drywall contractor, Duale Construction, declared insolvency and defaulted on its contract. This delayed the drywall installation. JWP/Hyre typically coordinates its work closely with the drywall contractor. However, the delay in the installation of the drywall required JWP/Hyre to use its crews inefficiently. JWP/Hyre also alleges that it had to hire extra supervisory personnel due to the numerous difficulties in the project.

Cleary also claims to have suffered from the delays in the project. Because Cleary was hired to do the finishing work, it could not proceed until much of the other work was complete. Also, Cleary had to work in difficult conditions and had to work quickly to make up lost time. As a result, Cleary incurred additional labor and other costs.

On October 7, 1993, JWP/Hyre sent a letter to Carbone, demanding additional compensation from MEVSD. JWP/Hyre sought compensation for the following: (1) unresolved change order requests; (2) direct additional costs based on conditions caused by others; (3) indirect additional costs based on those same conditions. JWP/Hyre sought approximately $39,000 for the change order requests, $280,000 for direct costs, and $46,000 for indirect costs. MEVSD offered JWP/Hyre $22,000 to settle the change order dispute, but refused to pay any additional compensation for the delays or the project conditions, on the ground that such compensation was barred by the contract. JWP/Hyre then brought the instant action.

II.

The procedural history of this case is fairly complex. JWP/Hyre brought the original complaint against MEVSD, alleging that MEVSD breached its contract with JWP/Hyre by: (1) failing to pay for the additional work done; (2) failing to pay JWP/Hyre its retainage;[1] (3) failing to coordinate the work of the various contractors to the project; (4) failing to ensure that JWP/Hyre could perform its work in a reasonable manner; and (5) failing to take required action with respect to other contractors to ensure that JWP/Hyre could perform its work efficiently. Upon MEVSD's motion, several of the other

---

1. This is money held by MEVSD pursuant to the contract to satisfy any claims MEVSD may have against JWP/Hyre.

co·,tractors, including Cleary, were joined as party-defendants.[2]

JWP/Hyre then filed an amended complaint, adding the joined contractors as defendants. MEVSD impleaded Carbone and HWH Architects–Engineers–Planners, Inc. (the architect of the project) as third-party defendants. MEVSD also filed a cross-claim against each codefendant, alleging that they are obligated by contract to defend MEVSD and to indemnify it for any damages that may result. Cleary then filed a cross-claim against MEVSD, alleging that it was owed approximately $465,324 for original contract work, additions to that work, and additional work and expenses due to delays attributable to MEVSD.

### III.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . .

The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an ad-

verse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

### IV.

In this case, MEVSD argues that JWP/Hyre's and Cleary's claims for breach of contract based on the delays in the project[3] are barred by the express language of the contracts.[4] In Ohio,[5] the construction of

---

2. The other added contractors are Northern Valley Contractors, Inc., Northeastern Cement Co., Inc., Vadakin Refrigeration & Air Conditioning, Inc., Northern Ohio Plumbing, Inc., Amthor Steel, Inc., and Industrial First, Inc.

3. Because this motion only seeks judgment on those claims which are the result of the delays in the project, it is more appropriately considered a motion for partial summary judgment.

4. JWP/Hyre's and Cleary's contracts with MEVSD, while obviously not identical in all re-

a written contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, syll. paragraph 1 (1978). Thus, if the contract is clear and unambiguous, there is no issue of fact to be determined and summary judgment is appropriate. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271, 272 (1984). MEVSD relies on four different sections of the contract. This Court will deal with each in turn.

### A. Paragraph 8.3.5 (No Damages for Delay Clause)

MEVSD points first to Paragraph 8.3.5 of the supplemental conditions to the contract which provides:

> The Contractor agrees that whether or not any delay shall be the basis for an extension of time *he shall have no claim against the Owner for a payment or allowance of any kind for damage, loss or expense resulting from delays;* nor shall the interruptions to, or suspension of, his work to enable other contractors to perform their work [sic]. The only remedy available shall be an extension of time.

 (Emphasis added). Such "no damages for delay" clauses are valid and enforceable under Ohio law. *Burns Bros. Plumbers, Inc. v. Groves Ventures Co.*, 412 F.2d 202, 207 (6th Cir.1969); *Carrabine Constr. Co. v. Chrysler Realty Corp.*, 25 Ohio St.3d 222, 495 N.E.2d 952, 957 (1986) However, they are not enforced where the delay for which recovery is sought was not reasonably contemplated by the parties at the time of contracting. *Carrabine*, 495 N.E.2d at 957; *Nix, Inc. v. City of Columbus*, 111 Ohio App. 133, 171 N.E.2d 197, 204–05 (1959); *Avon Excavating Co. v. City of Parma*, LEXIS 41557, slip op. at 12 (Ohio Ct.App.1980). Whether the delay in a particular case was reasonably contemplated is a question of fact for the jury. *See Avon Excavating*, slip op. at 12. In the current case, JWP/Hyre and Cleary have produced evidence that the delays that actually occurred were not in the contemplation of the parties at the time of contracting. *See, e.g.,* Affidavit of John Cleary (Cleary Aff.), ¶ 19; Affidavit of John Kroehle (Kroehle Aff.), ¶¶ 12–13; Affidavit of E.C. Corfias (Corfias Aff.), ¶ 28. Therefore, there is a genuine issue of material fact as to whether the parties contemplated the delay and summary judgment is inappropriate.

MEVSD argues that the delay in this case was within the contemplation of the parties as a matter of law. It relies on *Burns* and *Carrabine*, in which the courts enforced similar clauses. *See Burns*, 412 F.2d at 207; *Carrabine*, 495 N.E.2d at 957. Both cases are easily distinguished from the present case, however. In both cases, the contractor explicitly promised to be responsible for the cause of the delay. In *Carrabine*, the delay was due to a failure to obtain the necessary building permits and licenses, and the contract explicitly placed the burden of complying with the local ordinances on the contractor. *Carrabine*, 495 N.E.2d at 957. In *Burns*, the delay was due to flooding of the Ohio River. *Burns*, 412 F.2d at 207. The bidding specifications warned all bidders that flooding was possible. *Id.* The court also noted that flooding of the Ohio River was predictable. *Id.* Accordingly, the court in each case held that the contractor contemplated the delay when it entered into the contract and that the no damages for delay clause was enforceable. *Id.; Carrabine*, 495 N.E.2d at 957.

In the present case, however, JWP/Hyre and Cleary did not promise to prevent delays caused by other contractors, or by MEVSD. To the contrary, MEVSD promised that Carbone would supervise and coordinate the work of all the contractors so that JWP/Hyre and Cleary could plan and perform the work properly. *See* Contract, ¶¶ 2.2.3 and 2.3.7. In other words, JWP/Hyre and Cleary allege that MEVSD promised to avoid these types of delays. This is the precise opposite of *Carrabine* and *Burns*, where the contractors explicitly took on the responsibility for the delays at issue.

spects, have identical language regarding damages due to delay, and thus will be considered together.

5. The parties agree that Ohio law governs this diversity dispute.

Instead, the more analogous cases are *Nix* and *Avon Excavating*. In *Nix*, the city hired the plaintiff to build a bridge. *Nix*, 171 N.E.2d at 197. The city specifically represented that it had acquired the right of way for the bridge. *Id.* at 198. In fact, it had not acquired the right of way, and the project was delayed while the right of way was obtained. *Id.* at 199. The contractor sued for damages resulting from the delay, and the city defended on the ground that the claim was barred by a clause in the contract which precluded claims for damages based on delay "from any cause whatever." *Id.* at 200. The court concluded that the delay due to the city's failure to acquire the right of way was not within the contemplation of the parties and that the trial court had erred in entering judgment for the city. *Id.* at 204–05.

In *Avon Excavating*, the contract was for sewer work. *Avon Excavating*, slip op. at 12. The contractor alleged that the city forced him to begin work in awkward places, i.e., other than the terminus of the sewer lines, resulting in a delay. *Id.* The court ruled that whether the resulting delay was within the contemplation of the parties was a question for the jury, despite contract language that precluded delay damages. *Id.*

The case before the Court mirrors both *Nix* and *Avon Excavating*. Just as the plaintiff in *Nix* alleged that the city's failure to keep its promise to obtain the right of way caused the delay, JWP/Hyre and Cleary have presented evidence that MEVSD's failure to keep its promise to coordinate the work caused delays. *See, e.g.*, Kroehle Aff., ¶¶ 12, 14, and 16; Corfias Aff., ¶ 24. Similarly, as the plaintiff in *Avon Excavating* alleged that the city's order to begin work in awkward places caused the delay, JWP/Hyre and Cleary have presented evidence that MEVSD ordered them to perform work in ways which did not efficiently utilize their workers, causing delays. *See e.g.*, Kroehle Aff., ¶ 7; Corfias Aff., ¶¶ 18 and 20. This Court cannot conclude that the delays here were contemplated as a matter of law and

therefore, summary judgment is inappropriate.

## B. *Paragraph 8.3.12*

■ MEVSD argues that the damages are barred by Paragraph 8.3.12 of the contract, which provides:

> In the event of separate Trade Contractors for the Work if a time extension is granted to one or more Trade Contractors for a valid delay, a time extension may also be granted other Trade Contractors if, in the opinion of the Construction Manager, their progress or work scheduled is materially affected by the time extension granted. If no time extension is allowed to the Trade Contractor, or should the Trade Contractor decline a time extension offer, *the Trade Contractor shall make no claim against the Owner for damages alleged to be the result of any time extension granted to others.*

(Emphasis added). In order for this clause to bar a claim for damages, the following must have occurred: (1) the trade contractor must have either not been given or declined an extension of time; and (2) the damages must stem from an extension of time given to another contractor. As JWP/Hyre points out, MEVSD has produced no evidence that the damages which JWP/Hyre and Cleary seek stem from an extension of time given to another contractor. Moreover, it has not even submitted evidence of an extension of time given to another contractor. Therefore, this clause does not bar the damages sought and summary judgment is inappropriate.[6]

## C. *Paragraph 8.3.1.*

MEVSD also argues that paragraph 8.3.1 bars JWP/Hyre's and Cleary's claims for damages due to delay. Paragraph 8.3.1, as amended by supplemental condition 8.3.1, provides:

> If the Contractor is delayed at any time in the progress of the work by any act or neglect of the Owner, the Architect, the Construction Manager, any of their em-

---

**6.** The parties discuss at great length whether JWP/Hyre declined an extension of time. Given that MEVSD has failed to meet its burden re-

garding the second prong of the clause, the Court need not resolve this issue.

ployees, any separate contractor employed by the Owner, or by changes ordered in the Work, labor disputes, fire, unusual delay in transportation, adverse weather conditions not reasonably anticipatable, unavoidable casualties, any causes beyond the Contractor's control, delay authorized by the owner pending arbitration or by any other cause which the Construction Manager determines may justify the delay, then the Contract time shall be extended by Change Order for such reasonable time as the Construction Manager may determine.

No extension of time shall be granted for delays on account of, or resulting from, weather conditions except only for the catastrophic weather conditions mentioned in this paragraph; nor shall the Contractor be granted an extension of time for delays resulting from interruptions to or suspensions of his work to enable other contractors to perform their work.

MEVSD argues that this clause, by providing only for an extension of time, implies that an increase in compensation is not available. However, the express language of the contract negates that implication. Paragraph 8.3.4 provides:

This Paragraph 8.3 does not exclude the recovery of damages for delay by either party under other provisions of the contract documents.

The contract itself provides that Paragraph 8.3.1 does not bar the claims and summary judgment is not appropriate on this ground.

### D. Paragraph 8.3.13

■ MEVSD also argues that JWP/Hyre's and Cleary's claims are barred by paragraph 8.3.13, which provides:

It shall be recognized by the Trade Contractor that he may reasonably anticipate that as the job progresses, the Construction Manager will be making changes in and updating the construction schedule pursuant to the authority given to him in subparagraph 2.2.3. Therefore no claim for an increase in the Contract Sum for either acceleration or delay will be allowed for schedule revisions *which are of the type*

*ordinarily experienced in projects of similar size and complexity.*

(Emphasis added). By its very language, this clause does not bar claims based on delay where the delay is not of a type ordinarily experienced in similar projects. JWP/Hyre and Cleary have submitted evidence that indicates that the delays were "extreme and unusual" for a project of this size and complexity, and not those ordinarily experienced. *See, e.g.,* Cleary Aff., ¶ 19; Kroehle Aff., ¶ 12; Corfias Aff., ¶ 28. Therefore, a genuine question of material fact exists as to the operation of this clause, and summary judgment is not appropriate on this ground.

### E. Ultimate Liability

■ Finally, MEVSD argues that summary judgment should be granted because it will not be ultimately liable for the damages sought by JWP/Hyre and Cleary. MEVSD points to paragraph 6.2.5, which provides:

Should the Contractor wrongfully delay or cause damage to the work or property of any separate contractor, the Contractor shall, upon due notice, promptly attempt to settle with such other contractor by agreement, or otherwise to resolve the dispute. If such separate contractor sues or initiates an arbitration proceeding against the Owner on account of any delay or damage alleged to have been caused by the Contractor, the Owner shall notify the Contractor who shall defend such proceedings at the Owner's expense, and if any judgment or award against the Owner arises therefrom, the contractor shall pay or satisfy it and shall reimburse the Owner for all attorneys' fees and court or arbitration costs which the Owner has incurred.

This clause does not exculpate MEVSD from liability *vis-a-vis* JWP/Hyre and Cleary, however. Rather, it provides for indemnification from the other contractors. The fact that MEVSD is indemnified does not bar the claim or require JWP/Hyre and Cleary to make the claim directly against the other contractors. Instead, if MEVSD has breached its contractual duties to JWP/Hyre and Cleary, they have a right to sue MEVSD directly, and MEVSD can then collect from the responsible parties.

## V.

For the foregoing reasons, this Court concludes that JWP/Hyre's and Cleary's claims for damages due to delay [7] are not barred by the contracts and that genuine issues of material fact remain. Therefore, MEVSD's motion for summary judgment is denied.

IT IS SO ORDERED.

---

7. Given that the claims for damages due to delay are not barred as a matter of law, this Court need not determine at this time which alleged damages are due to delay, and which are due to some other cause.