OPINION
{¶ 1} Plaintiff, Gerry Lasson, appeals from an order granting partial summary judgment in favor of Defendant, Stacey Coleman, on her counterclaim under the Consumer Sales Practices Act and her request to declare Lasson a vexatious litigator pursuant to R.C. 2323.52. *Page 2 
 {¶ 2} Lasson operates "RTO Homes Program" under various names, including "Windstar III," "Affordable Best Homes," and "Action Homes." In November of 2004, Windstar III and Coleman allegedly entered into a lease and purchase agreement permitting Coleman to occupy and potentially acquire title to residential property at 305 Huntsford Place in Trotwood, Ohio. The Trotwood property is owned by Donald and Annetta Williams, who allegedly authorized Lasson to act on their behalf in matters pertaining to the Trotwood property.
 {¶ 3} The fees and purchase price for the Trotwood property totaled $107,432.00. Coleman was required to provide $4,900.00 up front, with the remainder to be paid in variable amounts as noted on the first page of the "purchase agreement." Bi-monthly payments were also required by the purchase agreement, along with express provisions for an additional $45.00 for any payments not postmarked by the due date. Once payment was overdue by five days, the contract purportedly was in default. Similar terms were included in the lease.
 {¶ 4} Lasson personally represented to Coleman that he would provide credit counseling services and assistance acquiring financing to purchase the Trotwood property. Also, Lasson represented that he would use a limited power of attorney he obtained from Coleman to negotiate to improve *Page 3 
Coleman's credit rating.
 {¶ 5} On March 15, 2005, Coleman mailed two checks to Lasson made payable to "Action Homes." The first check, in the amount of $374.00, was apparently for the rent payment due on that date. The second check, in the amount of $130.00, was for payment on a credit card. On March 16, 2005, Coleman received a notice to vacate for failure to pay rent.
 {¶ 6} On March 22, 2005, Lasson commenced a forcible entry and detainer action against Coleman. After Coleman filed a counterclaim, the action was certified to the Court of Common Pleas of Montgomery County. Lasson filed an amended complaint, and Coleman filed an amended counterclaim, alleging violations of the Consumer Sales Practice Act, R.C. Chapter 1345, and asking the court to determine that Lasson is a vexatious litigator pursuant to R.C. 2323.52.
 {¶ 7} On August 11, 2006, Coleman filed a motion for partial summary judgment on her Consumer Sales Practices Act and Vexatious Litigator claims. The trial court granted Coleman's motion for partial summary judgment on both. Lasson filed a timely leave to appeal and notice of appeal. We granted leave to appeal. Lasson asserts seven assignments of error relating to his designation as a vexatious litigator. Lasson does not raise any error regarding the summary judgment *Page 4 
the court granted on Coleman's Consumer Sales Practices Act claim.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DECLARED GAL A COMPLETE AND TOTAL VEXATIOUS LITIGATOR FOR ALL CASES IN ALL COURTS OF THE STATE OF OHIO, FOREVER."
 {¶ 9} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools Bd. OfEdn. (1997), 122 Ohio App.3d 378, 383, citing Dupler v. MansfieldJournal Co. (1980), 64 Ohio St.2d 116, 119-20. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704,711.
 {¶ 10} "The appropriateness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that *Page 5 
reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Inc. (1978),54 Ohio St.2d 64, 66. See also Civ. R. 56(C).
 {¶ 11} A person who has defended against habitual and persistent vexatious conduct may commence a civil action to have an individual declared a vexatious litigator. R.C. 2323.52(B). R.C. 2323.52(A)(3) provides that:
 {¶ 12} "`Vexatious litigator' means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. `Vexatious litigator' does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio unless that person is representing or has represented self [sic] pro se in the civil action or actions." *Page 6 
(Emphasis supplied.)
 {¶ 13} "Vexatious conduct" means conduct of a party in a civil action that satisfies any of the following:
 {¶ 14} "(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.
 {¶ 15} "(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.
 {¶ 16} "(c) The conduct is imposed solely for delay." R.C. 2323.52(A)(2).
 {¶ 17} The trial court declared Lasson a vexatious litigator based on his conduct in the present case and three prior cases. The trial court noted the following activity in Sutherland v. Lasson, Montgomery County Case No. 1999 CV 0776, that supported a vexatious litigator designation: (1) Lasson failed to appear at a discovery hearing; (2) many of Lasson's discovery responses were illegible or stated "see following" but he did not attach the documents; (3) Lasson made promises to provide discovery during extrajudicial informal discussions regarding the discovery but failed to perform those promises; (4) Lasson's objections to the magistrate's decision were extremely overbroad and failed to set forth any rationale for believing any particular decision was biased or unfair; (5) *Page 7 
Lasson unsuccessfully attempted to bring in the mothers of the plaintiffs as third parties where the mothers were not legally interested parties; (6) the magistrate granted plaintiff Sutherland's request for attorney's fees resulting from Lasson's frivolous conduct in contesting a non-wage garnishment and requesting a hearing; (7) Lasson failed to properly provide a transcript from the hearings to the trial court despite possessing the hearing CD for months; and (8) Lasson filed his appellate brief in violation of App. R. 19, which requires double spacing. (Decision, p. 25-29.)
 {¶ 18} The trial court next summarized the proceedings in Best Homesv. Martz, Montgomery County Case No. 02CV4216. There, the trial court dismissed the case after a six-month stay, because Lasson failed to comply with the court's order to participate in a telephone conference, and Lasson had filed the suit at the same time he allegedly was seeking relief in bankruptcy court. (Decision, p. 29-30).
 {¶ 19} The trial court also noted the following activity in Lasson v.Miller, Montgomery County Case No. 04CV4447, that weighed in favor of a vexatious litigator finding: (1) Lasson's submission of evidence purporting to demonstrate the registration of a fictitious name was not certified or stipulated as evidence; (2) Lasson failed to state a claim *Page 8 
upon which relief could be granted against Defendants Carol and Joe Wyatt; (3) Lasson failed to present any appropriate evidence in support of his summary judgment motion against Defendants Miller and Biegel; (4) Lasson unsuccessfully attempted to utilize unsupported allegations in pleadings to oppose a Defendant's summary judgment motion; (5) on appeal, this appellate court overruled Lasson's motion for a stay and found that Lasson failed to provide any information to indicate that any bankruptcy case is currently pending; and (6) on appeal, we dismissed Lasson's appeal for failing to file a brief after having been warned twice that no further extensions for filing his appellate brief would be permitted. (Decision, p. 30-33.)
 {¶ 20} In the present case, the trial court noted the following conduct by Lasson that supported a vexatious litigator finding: (1) Lasson moved to remand his forcible entry and detainer claim to Area 1 Court without providing any support for his argument and despite the fact that the amount of damages sought in Defendant's counterclaim exceeded the county court jurisdictional limit and the fact that the common pleas court had concurrent jurisdiction regarding forcible entry and detainer actions; (2) Lasson attempted to delay or cancel a telephonic conference; (3) Lasson willfully violated *Page 9 
the applicable provisions of Civ. R. 11; (4) Lasson failed to attend a scheduled hearing; (5) Lasson attempted to delay the scheduled hearing with "unfounded arguments in a late-hour motion"; and (6) Lasson failed to file a transcript of the hearing. (Decision, p. 33-34.)
 {¶ 21} After summarizing Lasson's conduct in these four cases, the trial court found:
 {¶ 22} "Based on a review of all of the cases discussed above, this Court finds that Lasson has engaged in conduct that obviously serves to harass another party to the lawsuit. Based on a review of all of the cases discussed above, this Court finds that Lasson has engaged in conduct that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. Based on a review of all of the cases discussed above, this Court finds that Lasson has engaged in conduct that is imposed solely for delay.
 {¶ 23} "Lasson has previously been sanctioned for frivolous conduct in violation of R.C. § 2323.51. Lasson has also been sanctioned for his intentional misconduct in violation of Civ. R. 11. Although the remedies attendant to proceedings under the R.C. § 2323.51 `frivolous conduct in a civil action' section are distinct from the remedies provided in the *Page 10 
R.C. § 2323.52 `vexatious litigator' section, this Court finds that the sections are in pari materia. Both statutes address substantially identical forms of misconduct.
 {¶ 24} "Notably, in [Sutherland v. Lasson], Lasson was sanctioned for engaging in conduct not warranted by existing law or a good faith argument. In the case at bar, Lasson was sanctioned for engaging in conduct obviously imposed solely for delay.
 {¶ 25} * *
 {¶ 26} "Lasson's improper attempt to delay the briefing deadlines in [Lasson v. Miller] demonstrates one level of improper delay tactics. He repeatedly tried to re-argue the matter to the Second District. This is another level of improper delay tactics. Ultimately, he failed to timely pursue his appeal and the appellate court rendered the ultimate sanction for such misconduct, the appeal was dismissed.
 {¶ 27} "However, comparing the Announcement in the appeal and theBankruptcy Announcement in the case at bar, this Court notes that Lasson filed substantially identical documents in both cases. However, comparing the filing dates, this Court notes that Lasson filed theAnnouncement in the appeal weeks before he filed the BankruptcyAnnouncement in the case at *Page 11 
bar. The timing of the filing in the instant case, however, was obviously intended [to] result in an immediate cancellation of the telephonic conference set for the next day. Arguendo, Lasson could have filed his Bankruptcy Announcement in the case at bar on the same date as he filed the Announcement in [Lasson v. Miller]; the reasonable inference is Lasson intentionally delayed to intentionally create confusion and delay. This is an additional level of misconduct by Lasson, demonstrating persistent misconduct as well as an intent to delay.
 {¶ 28} "The evidence presented demonstrates that Lasson habitually attempts with no reasonable basis to join persons in his lawsuits that he cannot present a claim against under existing law. He has threatened in numerous filings to bring claims against Coleman's attorneys. He has brought claims against other attorneys, such as Mr. Biegel, who were representing clients who were also defending against Lasson's claims. This demonstrates conduct obviously intended to harass other parties and their counsel.
 {¶ 29} "Furthermore, this Court has issued multiple decisions addressing the jurisdictional posture of the case at bar. Many of Lasson's filings, including his instant Mot. Strike/Memo. Opp. to his multiple attempts to seek default *Page 12 
judgment on claims subject to final and appealable adverse summary judgment, constitute conduct unwarranted under existing law and conduct imposed solely to delay.
 {¶ 30} "Based on all of the foregoing, this Court hereby finds that Lasson has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in civil actions, including the case at bar, before multiple judges of this Court and in the Second District Court of Appeals, in violation of R.C. § 2323.52(A)(3). Therefore, the portion of the MPSJ regarding the vexatious litigator claim is sustained. The statutory prohibitions attendant to this finding are set forth below." (Decision, p. 34-37.)
 {¶ 31} In reviewing whether the trial court erred in granting summary judgment on Coleman's vexatious litigator claim, we must consider the purpose behind the vexatious litigator statute. "`The purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds and/or otherwise engage in frivolous conduct in the trial courts of this state. Such conduct clogs the court dockets, results in increased costs, and oftentimes is a waste of judicial resources — — resources that are supported by the taxpayers of this state. The *Page 13 
unreasonable burden placed upon courts by such baseless litigation prevents the speedy consideration of proper litigation.'" Mayer v.Bristow (2000), 91 Ohio St.3d 3, 13, quoting Cent. Ohio Transit Auth. v.Timson (1998), 132 Ohio App.3d 41, 50.
 {¶ 32} The vexatious litigator statute was designed to stop litigators who often "use litigation, with seemingly indefatigable resolve and prolificacy, to intimidate public officials and employees or cause the emotional and financial decimation of their targets. . . . Such conduct, which employs court processes as amusement or a weapon in itself, undermines the people's faith in the legal system, threatens the integrity of the judiciary, and casts a shadow upon the administration of justice. Thus, the people, through their representatives, have a legitimate, indeed compelling, interest in curbing the illegitimate activities of vexatious litigators." Mayer, 91 Ohio St.3d at 13.
 {¶ 33} Behavior that is more consistent with that of an inexperienced litigant should not trigger the vexatious litigator designation under R.C. 2323.52. Id. at 14. In short, the vexatious litigator designation is an extraordinary remedy that should be applied in very limited circumstances, on clear and convincing evidence that a pro se litigant *Page 14 
persistently and habitually uses the legal process solely to harass another party or delay an ultimate resolution in the legal proceeding.
 {¶ 34} Lasson argues that his designation as a vexatious litigator is unjustified and unfair. He contends that not all of the applications he has filed have delayed or stopped the litigation process. He also argues that being barred from commencing an action in any court in Ohio "is a terrible burden on someone unable to routinely pay for legal assistance, especially with all the litigation involved in rent to own homes, as there are no specific laws on the books yet for the specific RTO business, as there are for land contracts." (Brief, eleventh unnumbered page.)
 {¶ 35} We find it difficult to credit Lasson's contention that he is unable to pay for legal representation. He is engaged in a commercial enterprise that typically involves transactions substantial in their amounts. Neither are we persuaded that the conduct on which the trial court based its determination falls short of the definition of a vexatious litigator in R.C. 2323.52. The Supreme Court noted inMayer that R.C. 2323.52, "[a]t its core . . . establishes a screening mechanism that serves to protect the courts and other would-be victims against frivolous and ill-conceived *Page 15 
lawsuits filed by those who have historically engaged in prolific and vexatious conduct in civil proceedings." 91 Ohio St.3d at 13. Lasson's history as a pro se litigator satisfies that definition, and permitted the trial court to find that Lasson is not merely inexperienced, but vexatious.
 {¶ 36} Finally, we note that the consistent repetition of arguments and legal theories that have been rejected by the trial court numerous times can constitute vexatious litigation. Farley v. Farley, Franklin App. No. 02AP-1046, 2003-Ohio-3185, at ¶ 46. A review of Lasson's filings in the present case demonstrates such vexatious conduct.
 {¶ 37} Lasson's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 38} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DID NOT ALLOW ANY HEARINGS REQUESTED BY GAL."
 {¶ 39} Lasson argues that the trial court abused its discretion when it failed to grant him an oral hearing on Coleman's motion for summary judgment. "Whether to grant a party's request for oral hearing is a decision within the trial court's discretion." Hooten v. Safe Auto Ins.Co., 100 Ohio St.3d 8, 2003-Ohio-4829, ff14 (citations omitted). Lasson has failed to demonstrate that the trial court abused its *Page 16 
discretion in ruling on Coleman's motion for summary judgment without holding an oral hearing.
 {¶ 40} Further, Civ. R. 56(C) lists the forms of documentary evidence that may be submitted in a summary judgment proceeding, and provides: "No evidence or stipulation may be considered except as stated in this rule." That precludes consideration of oral testimony submitted for the first time at a hearing on a motion for summary judgment. CarrabineConstruction Co. v. Chrysler Realty Corp. (1986), 25 Ohio St.3d 222,225.
 {¶ 41} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 42} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DID NOT RESPOND TO GAL'S REQUEST FOR A PROCEDURAL MEETING CONCERNING FILING FOR LEAVE TO FILE ON CASES IN OHIO COURTS OTHER THAN THIS TRIAL COURT."
 {¶ 43} Lasson argues that the trial court erred by failing to respond to his request for a procedural meeting concerning how to file for leave to file in "cases in Ohio courts other than this trial court." R.C. 2323.52(D)(1)(a) permits the common pleas court that finds a person is a vexatious litigator to prohibit him from "[i]nstituting legal proceedings in the court of claims or in a court of common *Page 17 
pleas, municipal court, or county court." That provision neither contemplates nor requires a restriction of the prohibition to any particular court or the courts of a particular county. Further, the trial court is not required to hold a procedural meeting with the vexatious litigator to explain to him how to file a motion for leave to proceed.
 {¶ 44} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 45} "THE TRIAL COURT ABUSES ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DOES NOT ALLOW GAL TO DEFEND HIMSELF."
 {¶ 46} Lasson's contentions in this assignment of error are hypothetical, and fail to identify any particular injury he experienced as a result of his designation or what relief we may offer him for such an injury.
 {¶ 47} Lasson's fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 48} "THE TRIAL COURT ABUSES ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DOES NOT RULE ON PROCEDURAL ISSUES MOVED ON BY GAL."
 {¶ 49} In his fifth assignment of error, Lasson simply states "(Refer to Errors No. 3 4 above)". Lasson fails to present an argument in support of the error he assigns, which is required by App. R. 16(A)(7). *Page 18 
 {¶ 50} The fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 {¶ 51} "THE TRIAL COURT ABUSES ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DOES NOT ALLOW GAL TO ATTEMPT TO NOT ABUSE THE PROCESS OF THE COURT, TO ATTEMPT TO EXTEND THE LAW."
 {¶ 52} Lasson argues that the court should have permitted him an opportunity to show that he would not attempt to abuse legal process in the future or in the present case. That is the purpose of the post-designation "leave to proceed" authorized by R.C. 2323.52(F).
 {¶ 53} Lasson's sixth assignment of error is overruled.
SEVENTH ASSIGNMENT OF ERROR
 {¶ 54} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DOES NOT GIVE GAL DUE PROCESS AND EQUAL PROTECTION."
 {¶ 55} Lasson's due process argument was rejected by the Supreme Court in Mayer. His equal protection claim is not supported by any argument, but would fail because the classification provisions of R.C. 2323.52
have a rational basis. Mayer. His complaint that the presence of trial attorneys only delays or defeats relief in "RTO cases" is groundless. *Page 19 
 {¶ 56} The seventh assignment of error is overruled. The judgment of the trial court will be affirmed.
 BROGAN, J. and DONOVAN, J., concur. *Page 1