OPINION
{¶ 1} In this construction case, the appellant, Ohio Public Employees Retirement System ("PERS"), is the project owner who entered into a $6.3 million interior trades contract with appellee, Cleveland Construction, Inc. ("CCI"), to build portions of a $90 million office tower on East Town Street in downtown Columbus, Ohio. At trial, a jury found that PERS materially breached its contract with CCI by failing to properly schedule and coordinate the project's various tasks. *Page 2 
 {¶ 2} PERS does not challenge the jury's finding that PERS (and its construction manager, the Gilbane Building Company) failed to properly schedule and coordinate the project. The jury heard evidence concerning the lack of up-to-date project schedules, coordination issues, activity delay, out of sequence work, and the failure of the project manager to address issues impacting the schedule. Despite these problems, the project was substantially complete by the time set forth in a revised schedule.
 {¶ 3} The jury found that PERS materially breached the contract, and PERS does not challenge that fact. Implicit in the jury's finding of a material breach was that the failure to properly schedule the project led to labor inefficiencies that hindered the progress of the work and ultimately caused CCI to incur higher costs.
 {¶ 4} The jury awarded CCI $640,298 in damages for the loss of efficiency caused by PERS' breach. Prior to the case going to the jury, PERS unsuccessfully moved the court for a directed verdict, insisting that under the contract's terms, CCI had waived its right to collect damages. In ruling on the motion, the trial court determined that the contract did not unambiguously bar CCI's claim, and that the waiver provision at issue was unenforceable because of R.C. 4113.62(C)(1), which prohibits project owners from contracting out of liability for their own delay.
 {¶ 5} On appeal, PERS raises the following assignments of error:
 [I.] The Contract language in General Conditions § 6.1.1.5 and § 6.3.1 is enforceable when it provides that the sole remedy for interference, disruption or hindrance is an extension of time and there will be no additional compensation for acceleration or other loss of efficiency damages.
 [II.] The Trial Court erred in failing to direct a verdict when the evidence was undisputed that the contractor failed to seek a *Page 3 
time extension in writing as required by General Condition § 6.4.1, and therefore waived any claim for damages.
 [III.] The Jury nullified a proper instruction on the Total Cost Method of computing damages (which required no portion of the loss be caused by the Contractor) when the Jury's verdict implicitly acknowledged the Contractor's shortcomings, which were well supported by the record.
 {¶ 6} In its first assignment of error, PERS contends that the trial court misconstrued both the language of the contract and R.C.4113.62(C)(1), which invalidates no-damages-for-delay provisions. In connection with this assignment of error, PERS has urged us to review the entire case de novo, on the basis that the only issue for consideration is the interpretation of the contract, and the interpretation of R.C. 4113.62(C)(1).
 {¶ 7} Issues of contract construction and interpretation are questions of law subject to de novo review on appeal. Sherman R. Smoot Co. v. OhioDept. of Adm. Serv., 136 Ohio App.3d 166, 172. To the extent necessary to understand the nature and effect of the statute's relationship to the contract at issue, we will review those items without deference to the trial court's determination. We will not, however, review the entire case de novo, as the case presents questions of law, questions of fact, and mixed questions of fact and law. It is the function of the jury to weigh the evidence and find the facts. The jury's findings will not be overturned on appeal if there is competent, credible evidence to support them. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80;C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 8} Section 6.1.1.5 of the contract provides, in pertinent part, as follows:
 [CCI] agrees that the possibility that [it] may be subject to interference, disruption, hindrance or delay in the progress of *Page 4 
the Work from any and all causes is within the contemplation of the parties and that the sole remedy for such interference, disruption, hindrance or delay shall be an extension of time
 {¶ 9} In addition, Section 6.3.1 of the contract provides as follows:
 To the fullest extent permitted by law, any extension of time granted pursuant to paragraph GC 6.2 shall be the sole remedy which may be provided by [PERS], and [CCI] shall not be entitled to additional compensation or mitigation of Liquidated Damages for any delay, interference, hindrance or disruption, including, without limitation, costs of acceleration, consequential damages, loss of efficiency, loss of productivity, lost opportunity costs, impact damages, lost profits or other similar remuneration. [CCI] agrees that the possibility that [CCI] may accelerate its performance to meet the Construction Schedule is within the contemplation of the parties and that any such acceleration is solely within the discretion of [CCI]. This provision is intended to be, and shall be construed as consistent with, and not in conflict with, Section 4113.62, ORC, to the fullest extent permitted.
 {¶ 10} This "boilerplate" contractual language, known as a "no-damages-for-delay" clause, has been standard in state construction contracts and, until fairly recently, has been valid and enforceable. In 1998, however, the General Assembly declared no-damages-for-delay clauses void and unenforceable as against public policy "when the cause of the delay is a proximate result of the owner's act or failure to act." R.C. 4113.62(C)(1) (effective September 30, 1998), which invalidated these types of clauses in construction contracts, provides, in pertinent part, as follows:
 Any provision of a construction contract * * * that waives or precludes liability for delay * * * when the cause of the delay is a proximate result of the owner's act or failure to act, or that waives any other remedy for a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, is void and unenforceable as against public policy. *Page 5 
Thus, if CCI's claim for damages is not due to delay caused by PERS, the statute has no application, and the contract provisions quoted above would bar CCI's claim for damages.
 {¶ 11} PERS of course, contends that the statute does not apply to the claim in this case. PERS contends that CCI's claim is barred because, in reality, CCI has asserted a claim for acceleration costs, not delay damages.
 {¶ 12} PERS argues that in enacting R.C. 4113.62, the General Assembly did not expressly include the terms "acceleration costs," "loss of productivity costs," or other types of "inefficiency costs," and therefore the legislature intended to exclude them from the purview of the statute. In support of this argument, PERS cites to Minnesota's version of R.C. 4113.62, which specifically states that contractual provisions waiving liability for acceleration costs are also void as against public policy. Minn.Stat.Ann. 15.411.2 (2007).
 {¶ 13} The trial court, however, cited several sources that interpreted the concept of delay broadly and found that acceleration and loss of efficiency are embodied in the concept of delay. See, e.g.,Bates Rogers Constr. Corp. v. North Shore Sanitary Dist. (1980), 92 Ill. App.3d 90, 95 (citing [1976], 74 A.L.R.3d 187-264); JWP/Hyre Elec.Co. of Indiana v. Mentor Village School Dist. (N.D.Ohio, 1996), 968 F.Supp. 356, 361.
 {¶ 14} In Bates Rogers, a sanitary district failed to provide electrical power to the job within the time specified by the contract. The contractor sought to recover for cost overrun, excessive labor costs, labor "add-ons," excessive supervision, winter protection of the work, increased overhead, bond and insurance costs, interest or money borrowed and expended, and the loss of anticipated profits. The contractor attempted to avoid a no-damages-for-delay clause by arguing that such claims were for disruption and interference but not delays. The court disagreed with this interpretation, finding that the *Page 6 
contractor's claims were premised on the pleading that the plaintiffs were required by the fault of the defendant to perform their work out of sequence, thus ineffectively and less productively. The court found that this claim was for damages sustained for delay, and therefore the claim was precluded by the clause in the contract. See, also, Dugan MeyersConst. Co., Inc. v. Ohio Dept. of Adm. Servs., 162 Ohio App.3d 491,2005-Ohio-3810, affirmed 113 Ohio St.3d 226, 233, 2007-Ohio-1687 (citingBates Rogers with approval).
 {¶ 15} In JWP/Hyre Elec. Co., the court determined that failure to supervise and coordinate work led to delay, and orders to perform work in ways that did not efficiently utilize workers caused delay. We find these cases to be more persuasive in understanding the scope of delay damages within the meaning of the statute.
 {¶ 16} CCI has noted that the term "delay" is not defined in R.C.4113.62 even though other terms such as "contractor" or "construction contract" are. See R.C. 4113.62(G)(1) and (5). Thus "in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in which they are used." Weaver v. Edwin Shaw Hosp., 104 Ohio St.3d 390, 393,2004-Ohio-6549, at ¶ 12.
 {¶ 17} When used as a noun, as in R.C. 4113.62(C)(1), "delay" means "[hindrance to progress; (a period of) time lost by inaction or inability to proceed." Oxford English Dictionary (6 Ed.2007) 635. Delay is the result caused when something is postponed, hindered, or slowed. See Black's Law Dictionary (8 Ed.2004) 458. In the context of bond reduction in public improvements, a "delay claim" is a claim that arises due to default on provisions in a contract in regard to the time when the whole or any *Page 7 
specified portion of work contemplated in the contract must be completed. R.C. 153.80(C)(2).
 {¶ 18} In construction litigation, a project owner's delay can give rise to a number of different types of damages, including inefficiency costs, acceleration costs, loss of productivity costs, and unabsorbed home office overhead costs. See Robert F. Cushman James J. Myers, Construction Law Handbook (1999) Section 24.04 Common Compensable DelayExpenses. The authors collectively refer to these types of damages as "impact costs." These different types of damages for delay have been accepted by this court, and by other jurisdictions as well. See, e.g.,Sherman R. Smoot Co.; Samuel Grossi Sons, Inc. v. U.S. Fidelity Guar. Co., (Nov. 10, 2006), Pa.Com.Pl., Philadelphia Cty. 2004 No. 3590, (rejecting the argument that acceleration costs and delay damages are mutually exclusive). "At first glance, [accelerate and delay] appear to be antonyms. However, in this case, it is more proper to view them as two sides of the same coin * * * The time compression that caused the acceleration * * * was itself caused by delay." Id.
 {¶ 19} PERS' argument that acceleration costs are unrelated to delay is unsustainable. Although the General Assembly could have included the term "acceleration," in R.C. 4113.62, the legislature did not specifically exclude acceleration costs from the statute either. As we have discussed, acceleration costs are closely associated with project delay, and the statute's apparent purpose is to prevent owners from escaping liability when they have caused a project delay. The statute does not simply preclude recovery of "delay damages," rather, it precludes the waiver of liability for delay. Liability, in this context, means consequences — an owner cannot cause a delay, *Page 8 
and then avoid the natural consequences for causing the delay by using boilerplate contract language. See Black's Law Dictionary (8 Ed.2004) 932 ("The quality or state of being legally obligated or accountable; legal responsibility to another, * * * enforceable by a civil remedy.") This, the legislature has said, is void as against public policy. We therefore hold that Section 6.1.1.5 of the construction contract before us is unenforceable, and does not preclude CCI's damages award.
 {¶ 20} In the same vein, PERS attempts to characterize CCI's claim for damages as acceleration damages. As discussed above, in the construction context, the term delay encompasses loss of efficiency, disruption, and hindrance. Therefore, Section 6.3.1 of the contract is also unenforceable — because it purports to limit the remedies available to CCI in the event that PERS causes a delay. The statute clearly invalidates any contractual provision that not only waives liability for delay, but also limits or waives any remedy for delay. Section 6.3.1 purports to limit CCI's sole remedy to an extension of time, which violates R.C. 4113.62(C)(1). Section 6.3.1 is therefore invalid as well.
 {¶ 21} PERS asserts that if the word "delay" is removed from Sections 6.3.1 and 6.1.1.5 the remaining provisions are enforceable. We disagree. As discussed above, in certain situations, the term delay can encompass different types of damages, including inefficiency costs, acceleration costs, loss of productivity costs, and unabsorbed home office overhead costs. Here, there was evidence presented through CCI's expert, Theodore Needham, as to "several delays" on the project, "lots of delays on the project, and that "Cleveland was put in a position to where almost on a daily basis they were forced to look at the job and move work crews to areas where they could work. Really they were never able to work in an environment that was sequential, that was consistent *Page 9 
with the bid schedule." (Tr. 896, 898 899.) The facts here were such that a jury could reasonably find acceleration costs and inefficiency damages were caused by delay. That is not to say that every construction claim for acceleration costs is a delay claim. But in this case, delay encompassed damages for delay and inefficiency. Accordingly, R.C.4113.62 was put into play, and the contract terms were unenforceable.
 {¶ 22} The first assignment of error is not well-taken, and overruled.
 {¶ 23} In its second assignment of error, PERS argues that the trial court should have granted a directed verdict because CCI failed to request an extension of time in writing, as required by Section 6.4.1 of the contract.
 {¶ 24} We will uphold a trial court's denial of a motion for directed verdict so long as "reasonable persons might reasonably reach different conclusions" as to what the evidence has shown. See Hamden Lodge No.517, I.O.O.F. v. Ohio Fuel Gas Co. (1934), 127 Ohio St. 469, 482.
 {¶ 25} The precise issue of the validity of a no-damages-for-delay clause and a provision that requests for extension of time had to be in writing was reviewed recently by the Supreme Court of Ohio in Dugan Meyers Constr. Co., Inc., 113 Ohio St.3d 226, 2007-Ohio-1687. That case involved nearly identical contractual provisions as the instant case.
 {¶ 26} Dugan Meyers argued that they were excused from their obligation to request extensions of time in writing because the project owner had actual notice of the delay. Indeed, Dugan Meyers issued more than 700 requests for information to the project owner, each of which impliedly put the owner on notice that the project would not be able to be completed on time. However, Dugan Meyers failed to convince the *Page 10 
Supreme Court of Ohio that there was any evidence the project owner waived the requirement of written requests for extension of time or that the failure to request extensions was harmless. Dugan Meyers, at ¶ 18, 40, 41.
 {¶ 27} Despite similar contract provisions and facts, the result inDugan Meyers is inapposite to the current controversy. The parties entered into the contract at issue in Dugan Meyers before R.C. 4113.62
took effect. The Supreme Court of Ohio strongly intimated that if the contract had been entered into post R.C. 4113.62, the contract's no-damages-for-delay provisions would have been unenforceable. Id. at ¶ 31-33. Ultimately, however, the Supreme Court of Ohio's opinion inDugan Meyers simply enforced contractual language and found no evidence of waiver.
 {¶ 28} Here, because R.C. 4113.62(C)(1) prohibits a limitation of remedies for delay caused by the owner, CCI was not required to request an extension of time as its sole remedy for delay. Without a project schedule that addressed the many inefficiencies caused by earlier delay, an extension of time might well have added to CCI's damages, not mitigated them. Therefore, any failure of CCI to request an extension of time in writing is not per se barred by Dugan Meyers.
 {¶ 29} There is one area in which Dugan Meyers is instructive to our present case. The no-damages-for-delay clause defined damages for delay broadly and included acceleration costs, and loss of efficiency as part and parcel of the term "delay." The contract included the following pertinent language:
 "6.3 Any extension of time granted pursuant to paragraph GC 6.2 shall be the sole remedy which may be provided by the Department. In no event shall the Contractor be entitled to additional compensation or mitigation of Liquidated Damages for any delay listed in paragraph GC 6.2, including, without *Page 11 
limitation, costs of acceleration, consequential damages, loss of efficiency, loss of productivity, lost opportunity costs, impact damages, lost profits or other similar remuneration."
Dugan Meyers, at ¶ 12.
 {¶ 30} It is apparent that when an owner wants to bar damages for delay, the owner argues for broad characterization of the term "delay" as was the case in Dugan Meyers, Bates Rogers Constr. Corp., andJWP/Hyre Elec. Co., supra. Here, however, when seeking to avoid the elimination of a no-damages-for-delay clause, PERS seeks to interpret the term "delay" so narrowly as to preclude all of CCI's claims for damages.
 {¶ 31} When a party moves the court for a directed verdict, they are essentially telling the court that there are no fact questions for the jury, and that they should be entitled to judgment as a matter of law. See Civ.R. 50; see, also, Hamden Lodge, supra, at 482.
 {¶ 32} In this case, PERS is arguing that the trial court should have granted a directed verdict and found as a matter of law that the contract barred any claims because CCI failed to request an extension of time in writing.
 {¶ 33} The trial court, however, determined that whether CCI was obligated to request an extension of time was a factual question, and the jury found that CCI had no such obligation. Section 6.6 of the contract provided that any time extensions depended on the extent to which "Critical Path of the Construction Schedule" was affected. There was a factual dispute at trial as to whether the labor inefficiencies experienced by CCI arose from an unforeseeable cause beyond the control and without fault or negligence of CCI. This was a fact determination for the jury and therefore not appropriate for a directed verdict. *Page 12 
 {¶ 34} With respect to time extensions and no damages for delay, the jury was instructed as follows:
 1. If you find that CCI is seeking additional compensation for a cause due to an unforeseeable cause beyond the control and without fault or negligence of CCI, as referenced in general condition 6.2.1.3, then CCI needed to seek a time extension in writing or its claim was waived pursuant to general condition 6.4.1.
 2. If you find that CCI is not seeking additional compensation for a cause due to an unforeseeable cause beyond the control and without fault or negligence of CCI, as referenced in general condition 6.2.1.3, then CCI did not need to seek a time extension in writing to assert its claim.
 3. If a time extension was sought in writing or was not needed, then OPERS cannot assert the no damage for delay or acceleration provisions or any other limitation on a remedy for delay or acceleration in the contract.
Jury Instruction No. 20, Record, at 284; see, also, Tr. 2015. (Emphasis added.)
 {¶ 35} The evidence was such that the jury could have found that CCI was not required to seek a written time extension, and therefore, under the instructions given by the trial court, PERS could not assert the no-damages-for-delay provision in the contract. Thus, not only was the jury instructed to determine whether CCI had to request a time extension in writing, they were also instructed to disregard the no-damages-for-delay provisions if such a time delay was not needed. PERS has not assigned as error anything with regard to the above referenced instruction, and therefore has waived its argument that CCI's failure to request a written time extension waived any claim for damages.
 {¶ 36} We therefore overrule the second assignment of error. *Page 13 
 {¶ 37} In the third assignment of error, PERS argues that the jury improperly nullified the fifth interrogatory, which concerned CCI's proof of damages. PERS argues that the jury's verdict implicitly acknowledged the contractor's shortcomings. We disagree.
 {¶ 38} Jury nullification is a trial jury's inherent right to disregard its instructions (i.e., the letter of the law), and to reach a verdict based upon its own collective conscience. See Alan W. Scheflin,Jury Nullification: The Right to Say No. (1972), 45 S.Cal.L.Rev. 168, 212; see, also, Black's Law Dictionary (8 Ed.2004) 875.
 {¶ 39} The fifth jury interrogatory asked whether CCI proved, by a preponderance of the evidence, that they satisfied the elements that would entitle them to recover under the "total cost" or "modified total cost" method of computing damages. (Record, at 265.) Under the "total cost" method, a contractor's damages are the difference between actual costs and the original bid. Net Constr., Inc. v. C C Rehab. andConstr., Inc. (E.D.Pa. 2003), 256 F.Supp.2d 350, 355 (citingPhillips Constr. Co. v. United States [1968], 184 Ct. Cl. 249,394 F.2d 834). In order for CCI to be able to use the total cost method, the jury had to determine: (1) that it was impossible or highly impracticable for them to prove their actual losses directly; (2) that their bid was reasonable; (3) that the actual costs they sought from PERS were reasonable; and (4) that PERS' breach(es) were the sole cause of CCI's damages. After hearing all of the evidence in the case, the jury answered "yes" to all of these questions. PERS failed to object to the interrogatory when it was given, and waived error as to the interrogatory that was used.
 {¶ 40} PERS' argument is more properly characterized as a manifest weight argument and seeks to have this court reweigh the evidence as to each element of the *Page 14 
total cost method. For example, there was evidence presented on both sides of the issue as to whether CCI met each element. Both sides called experts who testified as to this matter. The jury had the right to believe or reject any or all of this testimony. This was not a case of jury nullification but rather a case where the jury credited the testimony of CCI's witnesses over those of PERS.
 {¶ 41} We, therefore, overrule the third assignment of error.
 {¶ 42} CCI has also filed a cross-appeal, raising one assignment of error:
 The trial court erred in refusing to allow David Asman to testify regarding the application of the Eichleay formula in support of TPC's claim for unabsorbed home office overhead.
 {¶ 43} CCI argues that it is apparent from the record that the trial court improperly excluded evidence concerning CCI's Eichleay damages. Eichleay damages (a.k.a. unabsorbed home office overhead) are incidental damages, which flow naturally from a project owner's breach of a construction contract, and comprise the contractor's unabsorbed overhead costs attributed to the government-caused delay. See, e.g., Sauer Inc.v. Danzig (2000), 224 F.3d 1340, 1347. "Home office overhead costs" are the costs incurred by the contractor for maintaining its whole business, thus, they cannot be attributed to any single contract or job. The method used to calculate these damages is known as the "Eichleay formula," which seeks to equitably allocate the portion of home office overhead costs incurred as a result of the government delay in a litigated contract. See, e.g., Complete Gen. Constr. Co. v. Oh. Dept. ofTransp. (2002), 94 Ohio St.3d 54, 58. Thus, "Eichleay damages," and the "Eichleay formula" are used interchangeably throughout construction law. See id.; see, also, Appeal of Eichleay Corp. (A.S.B.C.A. *Page 15 
July 29, 1960), No. 5183, 1960 WL 538 (citing Fred R. Comb Co. v.U.S. [1945], 103 Ct. Cl. 174).
 {¶ 44} In order to present a valid claim for Eichleay damages, the contractor must first demonstrate two important elements, which establish the prima facie case for a damages award. See Complete Gen.Constr., at 58. First, the contractor must demonstrate that it was on "standby." Id. (citing Interstate Gen. Govt. Contractors, Inc. v.West [1993], 12 F.3d 1053, 1056.) To be on "standby" also has two requirements: (1) work must be suspended for a period of uncertain duration; and (2) the contractor must be able to return to work immediately. See Complete Gen. Constr. (citing West v. All State Boiler,Inc. [1998], 146 F.3d 1368, 1373). The second prerequisite to presenting a claim for Eichleay damages is that the contractor must show that it would have been impracticable to take on any other work during the time on standby — i.e., that the uncertainty of the duration of the delay made it impracticable to commit to working on a different project at the same time. Id.
 {¶ 45} Here, the trial court prevented CCI from introducing testimony about its Eichleay damages because they were attempting to do so using a lay witness. CCI attempted to introduce evidence of its Eichleay damages through the testimony of David Asman, who is vice president of The Painting Company, one of CCI's subcontractors on the job. PERS objected to Mr. Asman's testimony on the grounds that he was not qualified to testify regarding The Painting Company's unabsorbed home office overhead costs. PERS ultimately convinced the trial court that expert testimony was required.
 {¶ 46} We fail to see why a lay witness would not be able to testify about this subject matter. The two prerequisites to presenting an Eichleay claim are both fact-related *Page 16 
questions: First, was the contractor on standby?; and second, was the contractor prevented from taking other work during the period of delay? These questions can be answered by a witness with personal knowledge of the relevant facts, not necessarily an expert witness. See, e.g.,Conti Corp. v. Ohio Dept. of Adm. Servs. (1993), 90 Ohio App.3d 462,468; Complete Gen. Constr., at 58-59.
 {¶ 47} We cannot know with certainty what the testimony of David Asman would have been because CCI failed to proffer the testimony for our review. Accordingly, CCI's cross-assignment of error must be overruled.
 {¶ 48} In sum, PERS' three assignments of error are overruled, and CCI's cross-assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur. *Page 1