[Cite as *Aggressive Mechanical, Inc. v. Ohio School Facilities Comm.*, 2012-Ohio-6332.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AGGRESSIVE MECHANICAL, INC.

    Plaintiff

    v.

OHIO SCHOOL FACILITIES COMMISSION

    Defendant

Case No. 2010-12745

Judge Joseph T. Clark
Magistrate Holly True Shaver

DECISION OF THE MAGISTRATE

{¶ 1} Plaintiff brought this action alleging breach of contract. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} On May 2, 2007, plaintiff entered into a contract with defendant for the heating, ventilation, and air-conditioning (HVAC) work of a public improvement project known as Southwood Elementary School. The project called for multiple prime contractors and consisted of both the renovation of an existing building and the construction of a new, 20,000 square foot addition. The total HVAC contract price was $1,767,000. The work was to be completed within 532 days after plaintiff's receipt of the notice to proceed, unless an extension of time were granted. The construction manager, Smoot Elford Resources (SER) was responsible for monitoring the project schedule for defendant.

{¶ 3} On June 18, 2007, the notice to proceed was issued, which resulted in a contract end date of November 14, 2008. The work was to begin on the third floor of the existing building and then flow in a logical sequence down through the lower floors

and out into the new building as work was completed by predecessor trades. However, from the outset, the project experienced delays due to problems with the design. An updated schedule was issued on May 14, 2008, and a recovery schedule was issued on September 11, 2008.

{¶ 4} On October 2, 2008, SER issued Construction Bulletin 63 (CB 63), which extended the contract 110 working days (159 calendar days) to April 22, 2009. (Defendant's Exhibit DD.) Prior to the issuance of CB 63, SER had advised the contractors that a bulletin would be issued to extend the contract and invited the contractors to submit pricing for additional costs related to the extension. In response, plaintiff submitted a pricing proposal to SER in the amount of $107,976.15. (Defendant's Exhibit F.) On December 18, 2008, Peggy Murphy, Project Manager for SER, issued a letter to plaintiff's owner, Kevin Hall, wherein she rejected plaintiff's pricing proposal. SER explained that plaintiff's method of calculation was not an acceptable means of determining costs for the extension of contract time per the change order pricing guidelines set forth in Article 7.6 of the contract's General Conditions (GC). SER directed plaintiff to revise and resubmit its costs associated with CB 63. (Defendant's Exhibit H.) On January 22, 2009, plaintiff submitted a revised proposal in the amount of $81,703.12. (Defendant's Exhibit F2.)

{¶ 5} On February 13, 2009, SER rejected plaintiff's revised pricing. SER referred plaintiff to GC Sections 7.6.6 and 7.6.7 for allowable costs. In an email from Murphy, she stated: "SER and the Owner agree that there are probable costs due for the extension of time on this project, but they must be within the structure of the contract and properly documented." (Defendant's Exhibit I.)

{¶ 6} On another matter, on April 21, 2009, Keith Davis, SER's on-site superintendent, sent Hall an email requesting something in writing that stated that plaintiff's work would not be completed by the April 22, 2009 finish date. Davis advised Hall to list "all items for which your work is being held up by other trades. This is

important to identify all items that will not be completed by the scheduled finish date and a reason for the item's status." (Defendant's Exhibit K.) In response, Hall sent the following email: "This is to notify that Aggressive [M]echanical's work on the southwood elem project will not be complete by the April 22 2009 finish date due to change order work[.] We will be working on bulletin 82#, bulletin 79#, bulletin 75#, this work should be completed by 5-5-09 we will also have a little control and balance work to finish." *Id.*

{¶ 7} On July 17, 2009, SER sent plaintiff a letter wherein SER adjusted plaintiff's figures and issued a proposed change order for CB 63 in the amount of $13,879.20. (Defendant's Exhibit L.) Plaintiff refused to sign the proposed change order. On July 30, 2009, Joe Studer, Project Engineer for SER, sent plaintiff an email confirming plaintiff's rejection of SER's proposed change order, wherein he stated: "The change order previously sent will not be executed and I will delete it from our system. I will arrange to have a field level Article 8 meeting at SER's office, just let me know when works best for you." (Defendant's Exhibit Z2.)

{¶ 8} After Studer's email, no correspondence regarding CB 63 occurred between the parties until November 24, 2009, when plaintiff sent SER a letter requesting an Article 8 hearing on its CB 63 claim in the amount of $81,703.12. In the letter, plaintiff notified SER of an additional claim for an extension of time from April 22 to August 3, 2009 and related costs for that time period in the amount of $75,605.53. (Defendant's Exhibit M.) The itemized costs for the CB 63 claim were based on a time period of 110 days and included a daily cost for punch list items and close out, a 10 percent general overhead charge for those two items, a profit of five percent of that total amount, a monthly cost for attending progress meetings, a monthly charge for "gangbox and tools," a daily cost for extended supervision, a $42,000 charge for demobilization and remobilization, and a charge for bond and insurance. The itemized costs for the second claim included the same categories as the CB 63 claim but were based on a time period of 103 calendar days. *Id.*

{¶ 9} On December 16, 2009, SER sent plaintiff a letter addressing plaintiff's two claims separately. First, with regard to the request for an equitable adjustment as a result of CB 63, SER advised plaintiff to follow the specific requirements set forth in GC Article 8. Murphy stated: "Please understand, that while the time constraints outlined [in Article 8 of the contract] have been grossly surpassed, the Construction Manager, the Architect and the Co-Ownership Team will consider your claim if properly documented and supported." (Defendant's Exhibit N.) Second, with regard to the claim for an extension of time and related costs, SER also advised plaintiff to review the requirements as set forth in Article 8. Murphy stated: "Without a clear and substantiated claim of the damages being sought, your request cannot realistically be evaluated. Please be aware that to date, other than a very brief email sent exclusively to our on-site superintendent on April 22, 2009, the Project has received no other written communication regarding this claim and presently, Aggressive Mechanical still has outstanding Contract Work which the completion of is in no way being impeded by the Project." *Id.*

{¶ 10} On March 1, 2010, plaintiff filed two Article 8 claims with SER: one regarding its rejected CB 63 pricing and the other regarding the extension of time referred to in its November 24, 2009 letter. In both claims, plaintiff provided the following language to correspond with GC Section 8.1.2.2: "The above extension of time is due to many changes in the contract documents, changes in work and delays in work caused by design issues and the very extensive time that was taken in resolving job issues, resulting in the very slow progress of the job. We have provided estimate work sheets for our claim of time extension. We have estimated our claim from our approved schedule of values like we have done other Columbus Public School jobs. We used this same format for Burroughs Elementary School, etc. which was approved by SER and CPS. It is our hope and intent, that this issue can be resolved at the first step in the dispute procedure. We are convinced that the extension of time in dispute is not our

responsibility to burden the cost. Aggressive supplied the man power and equipment to perform our work by the original completion date. Therefore a request of contract adjustment is appropriate." (Defendant's Exhibits O and O2.)

{¶ 11} On March 15, 2010, SER held a preliminary Article 8 meeting to review plaintiff's claims. At the meeting, SER requested that plaintiff provide revised pricing to include budgeted costs versus actual costs on the project. (Defendant's Exhibit Q). On March 17, 2010, SER sent a letter to Hall stating that the first field level Article 8 hearing was set for March 23, 2010.[1] (Defendant's Exhibit R.) Plaintiff responded to SER's request for revised pricing and submitted its actual costs versus its budgeted costs for the project. (Defendant's Exhibits T and U.) On March 30, 2010, defendant and SER held a field level Article 8 meeting with plaintiff to further review plaintiff's claims based on the newly submitted pricing. After the March 30, 2010 meeting, SER did not ask plaintiff for any additional information.

{¶ 12} On May 6, 2010, Thomas Sisterhen, Senior Project Manager with SER, issued a letter to plaintiff wherein he stated that in response to the field level Article 8 hearing, SER could not recommend a settlement. SER rejected both claims on the basis of insufficient documentation. Sisterhen also stated that the two Article 8 claims had not been submitted separately as SER had requested. Sisterhen stated, in relevant part: "As we discussed, the documentation presented by Aggressive in support of your response to the extension of time directed by Bulletin 63 is tainted with an additional claim for costs reported to have been sustained for added manpower and inefficiencies experienced by the Project. The additional 'claim' and the response to Bulletin 63 are two distinct and separate items that must be supported as such. We also discussed our concern that the back-up documentation that has been submitted is not sufficient in either application.

---

[1]At trial, the parties stipulated that the date of the letter was March 17, 2010, not 2009.

{¶ 13} "This completes the job site dispute resolution procedure of General Conditions Article 8.2. You are encouraged to review your options as outlined in Article 8.3 and 8.4."[2] (Defendant's Exhibit W.) Plaintiff did not file an appeal to the commission and the school district board as set forth in GC Section 8.3, but rather filed its complaint in this court on December 13, 2010.

{¶ 14} Plaintiff asserts that defendant breached the contract when it failed to compensate plaintiff for costs incurred as a result of delays on the project that were caused by the architect and owner. Plaintiff also asserts that defendant owes it damages for unpaid base contract work performed, along with a claim for unpaid retainage. Defendant counters that plaintiff breached the contract when it failed to follow the mandates of GC Articles 6, 7, and 8. Defendant also argues that the court lacks jurisdiction over plaintiff's claims in that it failed to exhaust its administrative remedies before filing suit.

## EXHAUSTION OF REMEDIES

{¶ 15} At the close of plaintiff's case, defendant moved the court to dismiss this action pursuant to Civ.R. 41(B)(2) on the ground that upon the facts and the law, plaintiff had shown no right to relief. Defendant argued that the court lacked subject matter

---

[2]GC Section 8.3 states:

"**APPEAL TO COMMISSION AND SCHOOL DISTRICT BOARD**

"8.3 .1 The Contractor may appeal the recommendation of the Construction Manager about a Change Order by providing written notice to the Commission and the School District Board within 30 days of the date of the Construction Manager's recommendation.

"8.3.2 The Commission and the School District Board shall, within 30 days of receipt of the Contractor's notice, schedule a meeting in an effort to resolve the dispute or render a decision on the dispute, unless an agreement is made between the Contractor, the School District Board, and the Commission to extend such time limit. The purpose of the meeting shall be to settle the issues in dispute. Chapter 119, ORC, shall not be applicable to any such meeting.

"8.3.3 The Commission and the School District Board shall, within 60 days of any meeting scheduled pursuant to paragraph GC 8.3 .1, render a decision on the dispute, unless an agreement is made between the Contractor, the Commission, and the School District Board to extend such time limit.

"8.3.4 The decision of the Commission and the School District Board shall be final and conclusive, subject to trial in a court of competent jurisdiction."

jurisdiction over plaintiff's claims in that plaintiff had failed to exhaust its administrative remedies as required by R.C. 153.12(B)[3] before filing suit. At trial, Hall admitted that after SER denied plaintiff's Article 8 claims, plaintiff did not appeal SER's decision to the Commission and the School District Board as outlined in Section 8.3 of the contract. Instead, plaintiff filed its complaint in this court.

{¶ 16} As the Tenth District Court of Appeals has stated: "If * * * only an actual final decision from the state could be deemed a rejection for purposes of when a cause of action accrues, then the parties would be permitted to delay a decision indefinitely, preclude the exhaustion of administrative remedies, and either forestall final resolution of the claim through litigation or, at the least, render dubious the date the cause of action accrued. Such an interpretation nullifies the ostensible purpose of R.C. 153.16(B): to ensure a remedy against the state for claimants such as plaintiff by defining when administrative remedies are exhausted, the cause of action accrues, and a cause of action may be filed in the Court of Claims. Under the statutory provisions at issue, the state is aware it must resolve disputes within 120 days or face legal action, so its failure to determine a claim before that 120-day period lapses, in effect, rejects the claim, withholds money allegedly owed to the plaintiff, and permits the plaintiff to institute an action against the state." *Painting Co. v. Ohio State Univ.*, 10th Dist. No. 09AP-78, 2009-Ohio-5710, 2009 Ohio App. LEXIS 4809, ¶13.

{¶ 17} In this case, plaintiff submitted notice of an Article 8 claim to SER on November 24, 2009, plaintiff filed its written Article 8 claims on March 1, 2010, SER rejected plaintiff's claims on May 6, 2010, and plaintiff filed its complaint in this court on December 13, 2010. The 120-day period starts when a notice of claim is filed. *See R.E. Schweitzer Construction Co. v. Univ. of Cincinnati*, 10th Dist. No. 10AP-954, 2011-

---

[3]R.C. 153.12(B) states, in relevant part: "If a dispute arises between the state and a contractor concerning the terms of a public improvement contract let by the state or concerning a breach of the contract, and after administrative remedies provided for in such contract and any alternative dispute resolution procedures provided in accordance with guidelines established by the director of administrative

Ohio-3703, 2011 Ohio App. LEXIS 3122, ¶ 25. By operation of law, plaintiff's administrative remedies were deemed exhausted on March 24, 2010, 120 days after it submitted its notice of Article 8 claims, despite the fact that plaintiff did not pursue the appeal process set forth in GC Section 8.3. "R.C. 153.12(B) and 153.16(B)[4], construed together, provide that any claim submitted under a public works contract with the state necessarily will accrue, at the latest, by the end of the 120-day statutory period when, by operation of law, all administrative remedies are deemed exhausted under R.C. 153.16(B), the claim is deemed rejected, and money the state allegedly owes is deemed withheld." *Painting Co., supra*, ¶ 14. Accordingly, defendant's argument that plaintiff failed to exhaust its administrative remedies by failing to appeal SER's decision does not divest the court of jurisdiction over plaintiff's claims. Defendant's motion to dismiss is DENIED.

**LAW**

{¶ 18} The purpose of contract construction is to give effect to the intention of the parties, and such intent "is presumed to reside in the language they chose to employ in the agreement." *Stoll v. United Magazine Co.*, 10th Dist. No. 03AP-752, 2004-Ohio-2523, 2004 Ohio App. LEXIS 2129, ¶ 7. In construing a written agreement, common words appearing in the written instrument are to be given their plain and ordinary meaning "unless manifest absurdity results, or unless some other meaning is clearly evidenced from the four corners of the documents." *Id.* at ¶ 8, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

---

services are exhausted, the contractor may bring an action to the court of claims in accordance with Chapter 2743. of the Revised Code."

[4]R.C. 153.16(B) states: "Notwithstanding any contract provision to the contrary, any claim submitted under a public works contract that the state or any institution supported in whole or in part by the state enters into for any project subject to sections 153.01 to 153.11 of the Revised Code shall be resolved within one hundred twenty days. After the end of this one hundred twenty-day period, the contractor shall be deemed to have exhausted all administrative remedies for purposes of division (B) of section 153.12 of the Revised Code."

Additionally, a court is not required to go beyond the plain language of an agreement to determine the parties' rights and obligations if a contract is clear and unambiguous. *Custom Design Technologies, Inc. v. Galt Alloys, Inc.,* 5th Dist. No. 2001CA00153, 2002-Ohio-100, 2002 Ohio App. LEXIS 43. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.*" Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984), citing *Alexander, supra.*

**CONSTRUCTION BULLETIN 63**

{¶ 19} SER issued CB 63 on October 2, 2008, which extended the contract time. GC Section 7.1.1 states: "The School District Board, without invalidating the Contract, may order changes in the Work consisting of additions, deletions or other revisions, subject to approval by the Commission.  To the extent the Contract Time or Contract Price is affected, the Contract may be equitably adjusted by Change Order in accordance with this Article."  The court finds that this contract language is unambiguous.  Thus, any costs that were associated with CB 63 were to be addressed as an equitable adjustment pursuant to the change order provisions of Article 7.

{¶ 20} Hall testified that he had used an approved schedule of values to calculate proposed change orders on other projects for the Columbus Public Schools in the past, and that the pricing had been accepted on those jobs.  According to Hall, he did not believe that plaintiff was required to follow Article 7 to price its proposed change orders. Hall admitted that he priced the claim according to plaintiff's schedule of values, but that Murphy requested that he price it according to the change order pricing guidelines contained in Article 7.

{¶ 21} GC Section 7.6, titled "Change Order Pricing Guidelines," sets forth the method for pricing change orders.  GC Section 7.6.3 states: "For each change, the Contractor shall furnish a detailed, written Proposal itemized according to these Pricing Guidelines. * * * In order to expedite the review and approval process, all Proposals

shall be prepared in the categories and in the order listed below.  These pricing Guidelines are intended to establish the maximum amount which the School District and the Commission will pay for any Change Order, including without limitation all amounts for interference, delay, hindrance, or disruption of the Work. * * *" The court finds that the language in GC Section 7.6 of the contract is unambiguous.  Accordingly, plaintiff was required to use the pricing guidelines in Article 7, not plaintiff's own schedule of values, to calculate its proposal in response to CB 63.

{¶ 22} Murphy used the Pricing Guidelines to calculate a proposed change order in the amount of $13,879.20, which was rejected by plaintiff.  GC Section 7.4.8 states: "If the Contractor does not agree with the School District Board's determination under paragraph GC 7.4.7, [adjustment of Contract Price associated with the adjustment of Contract Time] the Contractor shall request an equitable adjustment of the Contract under GC Article 8. * * *"  The court finds that the language in GC Section 7.4.8 is unambiguous.  Accordingly, when the parties could not reach an agreement on pricing for a change order as a result of CB 63, GC Section 7.4.8 required plaintiff to request an equitable adjustment of the contract under GC Article 8.  Plaintiff clearly did so in this case on March 1, 2010, when it submitted a formal claim letter.

{¶ 23} Defendant asserts that plaintiff cannot prevail on its Article 8 claim with regard to CB 63 because it failed to comply with the 10-day notice requirement in Article 8.1.1.[5]  In response, plaintiff argues that defendant waived strict compliance with the notice requirements of Article 8.1.1 by its words and actions.  Specifically, plaintiff points

---

[5]GC Section 8.1.1 states: "Any request for equitable adjustment of Contract shall be made in writing to the Architect, through the Construction Manager, and filed prior to Contract Completion, provided the Contractor notified the Architect, through the Construction Manager, no more than ten (10) days after the initial occurrence of the facts which are the basis of the claim.  To the fullest extent permitted by law, failure of the Contractor to timely provide such notice and a contemporaneous statement of damages shall constitute a waiver by the Contractor of any claim for additional compensation or for mitigation of Liquidated Damages."  GC Section 8.1.2 states: "In every such written claim filed in accordance with paragraph GC 8.1.1, the Contractor shall provide the following information to permit evaluation of the request for equitable adjustment of the Contract."

to SER's December 16, 2009 letter wherein Murphy stated: "while the time constraints outlined [in Article 8 of the contract] have been grossly surpassed, the Construction Manager, the Architect and the Co-Ownership Team will consider your claim if properly documented and supported." (Defendant's Exhibit N.) "[W]aiver of a contract provision may be express or implied. * * * '[W]aiver by estoppel' exists *when the acts and conduct of a party are inconsistent with an intent to claim a right*, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it. * * * Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights. * * * Whether a party's inconsistent conduct constitutes waiver involves a factual determination, * * * and such a factual determination is properly made by the trier of fact." *Lewis & Michael Moving and Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 10th Dist. No. 05AP-662, 2006-Ohio-3810, 2006 Ohio App. LEXIS 3775, ¶ 29-30. (Internal citations omitted; emphasis in original.) Waiver is an affirmative defense and defendant bears the burden of proving such defense at trial. *See Cleveland Constr., Inc. v. Kent State Univ.*, 10th Dist. No. 09AP-822, 2010-Ohio-2906, 2010 Ohio App. LEXIS 2407, ¶ 48.

{¶ 24} At trial, Murphy testified that CB 63 was issued because in the summer of 2008 it became clear that the original contract end date could not be met. Murphy attributed the need for a time extension to the architect's failure to timely answer requests for information (RFIs) that various contractors had submitted during the project. Murphy also testified that the contractors were informed in advance that a bulletin would be issued to extend the contract end date and that the contractors were encouraged to submit pricing in response to the bulletin. Murphy did not testify that plaintiff or any other contractor was responsible for delays on the project which led to the contract end date being extended.

{¶ 25} The evidence shows that plaintiff submitted a request for an Article 8 hearing to SER on November 24, 2009. In the November 24, 2009 letter, plaintiff identified two claims: one with regard to CB 63, and another with regard to an additional

extension of time past April 22, 2009, and related damages. At the time it was submitted, SER was aware that no agreement had been reached with regard to CB 63 at the Article 7 stage and that the claim remained unresolved. Indeed, Studer's July 30, 2009 email shows that SER expected plaintiff's claim regarding CB 63 to proceed to the Article 8 stage, inasmuch as Studer inquired about plaintiff's availability for a field level Article 8 meeting. In the December 26, 2009 letter, SER acknowledged that even though plaintiff's Article 8 request was untimely, SER would consider plaintiff's CB 63 claim if it were properly documented. Based upon the evidence presented, the court finds that defendant waived the 10-day notice requirement set forth in Article 8 with regard to the CB 63 claim. SER's conduct as shown in the July 30 and December 16, 2009 correspondence is inconsistent with an intent to claim strict compliance with the 10-day notice requirement in Article 8. Indeed, the parties engaged in the Article 8 field level process in an effort to compromise the CB 63 claim. Therefore, the court finds that defendant waived the 10-day notice requirement with regard to plaintiff's Article 8 claim for CB 63.

{¶ 26} During the Article 8 process, defendant requested additional information from plaintiff in an effort to compromise the claim. Hall testified credibly that he attempted to comply with Article 8 during the meetings about plaintiff's claims, but he felt that SER was never satisfied with any of the information that plaintiff submitted to substantiate its claims. Murphy also testified credibly that she and Hall went back and forth in an effort to come to a resolution, but that they were not "on the same page" regarding plaintiff's claim. It is clear to the court that while plaintiff requested compensation for items that were not included in Article 7's change order pricing guidelines, such as punch lists and closeout, many of the items that plaintiff requested were recoverable costs, such as overhead and profit. Murphy consistently testified that SER was trying to decipher plaintiff's claims, had requested that they be in a certain format, and that although plaintiff did provide additional information, the form of the

information did not comply with her request. The evidence shows that the parties had substantially different ways of analyzing the information and significant disputes on what was a proper measure of damages with regard to CB 63.

{¶ 27} Based upon the evidence presented, the court finds that plaintiff has proven, by a preponderance of the evidence, that CB 63 was issued as a result of delays caused by the owner. The court further finds that plaintiff has proven both that defendant waived the 10-day notice requirement in GC Section 8.1.1, and that plaintiff complied with Sections 8.1.1 and 8.1.2 by filing its written claim on March 1, 2010. Moreover, the court finds that defendant's failure to provide a written recommendation about a change order for plaintiff's Article 8 claim with regard to CB 63 was a breach of GC Section 8.2.3 and that defendant's failure to recommend any compensation for that claim violates the prohibition of the waiver of liability for delay as set forth in R.C. 4113.62, inasmuch as defendant denied plaintiff compensation for delay on the project that was caused by the owner. Accordingly, plaintiff is entitled to compensation for damages it incurred as a result of CB 63. The court finds that defendant's refusal to compensate plaintiff for CB 63 on the basis that plaintiff failed to comply with the requirements of Article 8 is without merit. Indeed, "an owner cannot cause a delay, and then avoid the natural consequences for causing the delay by using boilerplate contract language." *Cleveland Constr., Inc. v. Ohio Pub. Emples. Ret. Sys.*, 10th Dist. No. 07AP-574, 2008-Ohio-1630, 2008 Ohio App. LEXIS 1403, ¶ 19. The court further finds that defendant acknowledged that plaintiff was owed at least $13,879.20 with regard to CB 63 when it was engaged in the Article 7 process. Accordingly, defendant's failure to compensate plaintiff for costs it incurred as a result of CB 63 was a breach of contract.

{¶ 28} Inasmuch as the court has found that the contract language in Article 7 is unambiguous, plaintiff shall be limited by the change order pricing guidelines in GC Section 7.6 when presenting its claim for damages related to CB 63.

**EXTENSION OF TIME AND RELATED DAMAGES**

{¶ 29} The second claim for which plaintiff requested an Article 8 hearing in its November 24, 2009 letter was an extension of time from April 22, 2009 to August 3, 2009, along with a claim for damages in the amount of $75,605.53. (Defendant's Exhibit M.) For the following reasons, the court finds that plaintiff failed to prove by a preponderance of the evidence that defendant waived the contractual requirements found in Articles 6, 7, or 8, and, therefore, plaintiff cannot prevail on this claim.

{¶ 30} The court notes that on April 22, 2009, plaintiff sent SER the following email: "This is to notify that Aggressive [M]echanical's work on the southwood elem project will not be complete by the April 22 2009 finish date due to change order work[.] We will be working on bulletin 82#, bulletin 79#, bulletin 75#, this work should be completed by 5-5-09 we will also have a little control and balance work to finish." (Defendant's Exhibit K.)

{¶ 31} GC Section 7.4.5.2 states: "By signing a Change Order, the Contractor irrevocably certifies that the scope of the change in the Work, the associated adjustment Contract Time (if any), and the associated adjustment of the Contract Price (if any) are completely satisfied, and waives all rights to seek a further adjustment of the Contract Time, the Contract Price, or both, at a later date with respect to the associated change in the Work." At trial, Hall admitted that change orders were issued in connection with Bulletins 82, 79, and 75, and that plaintiff was paid in accordance with such change orders even though plaintiff's work was not complete by April 22, 2009. The court finds that the language in GC Section 7.4.5.2 is unambiguous. Inasmuch as plaintiff accepted payment for the change orders issued with regard to bulletins 82, 79, and 75, plaintiff has waived any additional compensation with regard to those claims.

{¶ 32} Furthermore, to the extent that plaintiff seeks damages related to the delayed completion of the work, Section 6.4.1 of the contract states: "Any request by the

Contractor for an extension of time shall be made in writing to the Construction Manager no more than ten (10) days after the initial occurrence of any condition which, in the Contractor's opinion, entitles the Contractor to an extension of time. Failure to timely provide such notice to the Construction Manager shall constitute a waiver by the Contractor of any claim for extension, damages or mitigation of Liquidated Damages, to the fullest extent permitted by law." Although plaintiff notified SER on April 22, 2009 that it was continuing to work on the project past the contract end date, Hall admitted at trial that the first notice of a claim with regard to a request for an extension of time from April 22 to August 3, 2009 was made on November 24, 2009.

{¶ 33} Additionally, GC Section 6.4.2 outlines the requirements that must be contained in the request.[6] Hall's April 22, 2009 email does not contain the required information as set forth in Section 6.4.2.1-9 of the contract. The court finds that the language in Article 6 is unambiguous. Therefore, inasmuch as plaintiff failed to comply with the requirements of Article 6 with respect to a time extension from April 22 to August 3, 2009, plaintiff's claim in this regard has been waived.

{¶ 34} With regard to plaintiff's Article 8 claim for damages related to such extension in the amount of $75,605.53, plaintiff failed to comply with the 10-day notice requirements of Article 8. Although plaintiff argues that SER waived strict compliance with Article 8, the court finds that neither Studer's July 30, 2009 email nor Murphy's December 15, 2009 letter constitutes conduct inconsistent with an intent to enforce the notice requirements of Article 8. Studer's email related solely to the unresolved change order contemplated by CB 63. Murphy's letter separated plaintiff's two claims, and with regard to plaintiff's claim for an extension of time and related damages, she advised plaintiff to review the requirements as set forth in Article 8 and stated: "[w]ithout a clear and substantiated claim of the damages being sought, your request cannot realistically

---

[6]GC Sections 6.4.2.1-6.4.2.9 set forth the specific information that the request for an extension of time must include, such as nature of the interference, disruption, hindrance or delay; the identification of

be evaluated.   Please be aware that to date, other than a very brief email sent exclusively to our on-site superintendent on April 22, 2009, the Project has received no other written communication regarding this claim and presently, Aggressive Mechanical still has outstanding Contract Work which the completion of is in no way being impeded by the Project." *Id.*  SER's conduct with regard to plaintiff's request for an extension of time and related damages shows that it did not have timely notice of this claim and that it did not waive its right to enforce the contractual provisions regarding notice.

{¶ 35} Inasmuch as plaintiff has failed to comply with the contractual requirements and has failed to prove that defendant waived such compliance, plaintiff's claim for an extension of time from April 22 to August 3, 2009, and related damages must fail.

{¶ 36} Lastly, at trial, plaintiff presented some evidence with regard to unpaid contract balance and retainage, but it is unclear to the court what amount remains outstanding.   Therefore, the parties shall be permitted to present evidence regarding those claims at the damages trial.

{¶ 37} For the foregoing reasons, the court finds that plaintiff has proven its claims regarding CB 63, contract balance, and retainage by a preponderance of the evidence and, accordingly, judgment is recommended in favor of plaintiff.

{¶ 38} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely*

the reason for the delay; activities on the construction schedule that may be affected; the recommended action to minimize delay, etc.

*and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

David A. Beals                                    Douglas M. Beard
Jon C. Walden                                   Michael F. Copley
Assistant Attorneys General              1015 Cole Road
150 East Gay Street, 18th Floor        Galloway, Ohio 43119
Columbus, Ohio 43215-3130

002
Filed September 18, 2012
To S.C. Reporter January 28, 2013